```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                    NORTHERN DIVISION
                     AT COVINGTON
```

**CIVIL ACTION NO. 2007-01 (WOB)**

**DIEKER HOLDING, B.V.**                                **PLAINTIFF**

VS.                **MEMORANDUM OPINION AND ORDER**

**AMERICAN SIP CORPORATION,**
**ET AL**                                              **DEFENDANTS**

This matter is before the court on the parties' cross motions for summary judgment (Doc. #47, #50).

The court heard oral argument on these motions on Thursday, October 30, 2008. Gerald Baldwin represented the plaintiff, and Kevin Murphy and Tina Williams represented the defendants. Official court reporter Joan Averdick recorded the proceedings.

Having heard the parties, the court now issues the following memorandum opinion and order.

### *Factual and Procedural Background*

Dieker Holding, B.V. is a limited liability company organized under the laws of the Netherlands. It is owned and managed by Mr. Wilhelmus Dieker.

In 2003, Mr. Dieker purchased at auction in Switzerland a then-bankrupt company which he funded and which ultimately became known as SIP Société Instruments Physiques S.A. ("SIP Geneva"). SIP Geneva manufactured precision metal-working machines.

American SIP ("ASIP") was then a wholly-owned American subsidiary of SIP Geneva. ASIP marketed and distributed in the United States the machines manufactured by SIP Geneva. When an American customer ordered one of these machines, ASIP would purchase the machine from SIP Geneva, which would then manufacture and ship the machine directly to the U.S. customer. The customer would then pay ASIP, who would forward that payment to SIP Geneva. (Dieker Depo. at 41)

In 2005, Honeywell USA placed an order with ASIP for a machine manufactured by SIP Geneva known as the "Orion 5." However, before the machine could be shipped to Honeywell, SIP Geneva's Swiss facility was seized due to SIP Geneva's failure to pay the rent owed on it. The Orion 5 was among the assets seized. SIP Geneva's assets then fell within the control of the Geneva Receiver's Office.

In order to secure the release of the Orion 5, Mr. Dieker directed SIP Geneva – whom Dieker claims at that time owed him $5m Euros – to pay 150,000 Swiss francs to the Geneva Receiver's Office to facilitate the release of the machine for the benefit of ASIP. In exchange for this payment, ASIP would be required to pay Dieker the money received from Honeywell for the Orion 5.

This arrangement was set forth in two contracts: (1) an Agreement between Dieker Holding and SIP Geneva dated September 23, 2005 ("Agreement"); and (2) a Loan Facility Agreement between

Dieker Holding and ASIP also dated September 23, 2005. Mr. Dieker executed the Agreement for both Dieker Holdings and SIP Geneva. The Loan Facility Agreement was executed by Mr. Dieker for Dieker Holdings and by Greg Dunkley, then Vice-President and General Manager of ASIP. Both documents were drafted by Mr. Dieker.

The Orion 5 was thereafter released and shipped to Honeywell USA. Due to a delay in the machine's installation, however, Honeywell did not remit payment to ASIP until the end of 2005. (Dunkley Depo. at 92-93)

In the intervening period, Mr. Dieker caused SIP Geneva to file for bankruptcy in Switzerland. Thereafter, ASIP was directed by the Geneva Bankruptcy Office to turn over the proceeds from the sale of the Orion 5 to that office. (Dunkley Depo. at 95) ASIP thus made two wire transfers of the funds from Honeywell to the Geneva Bankruptcy Office: one on January 26, 2006 for $65,000 and a second on February 16, 2006 for $32,500.

The Geneva Bankruptcy Office subsequently sold off SIP Geneva's assets. Both Dieker Holding and Starrag-Heckert submitted bids for the assets, and the Geneva Bankruptcy Office approved the latter (through Heckert Trading AG, a sister company) to purchase those assets.

Dieker Holding then filed a claim in the SIP Geneva bankruptcy proceeding for the amount owed under the Loan Facility

3

Agreement.  (Dieker Depo. at 60)

On June 28, 2006, ASIP and Starrag-Heckert executed an "Asset Purchase Agreement" pursuant to which ASIP transferred to Starrag-Heckert its "Business Assets" in consideration for Starrag-Heckert's agreement to pay $100,000 to the new Geneva SIP entity.  (Exh. C to Plf. MSJ)  On September 18, 2006, ASIP and Starrag-Heckert executed an Amendment to the Asset Purchase Agreement under which Starrag-Heckert was also to receive ASIP's "Government Contracts."

Dieker filed this action on January 3, 2007, asserting claims against ASIP for breach of contract, promissory estoppel, and unjust enrichment.  Dieker also asserts claims against Starrag-Heckert for voidable transfer and successor liability.

### *Analysis*

Although this case presents many interesting questions of law, it appears that the whole action should be dismissed on the grounds of international comity to the Swiss bankruptcy proceedings.

The principle of international comity "is an abstention doctrine." *Daewoo Motor America, Inc. v. General Motors Corp.*, 459 F.3d 1249, 1256 (11th Cir. 2006) (citation omitted).  Comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience,

4

and to the rights of its own citizens or of other persons who are under the protection of its laws." *Id.* at 1257-58 (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).

Federal courts have held that the doctrine of international comity is "especially applicable" in the bankruptcy context, "for comity enables a debtor's assets to be dispersed equitably and systematically rather than haphazardly or erratically." *Daewoo Motor America, Inc. v. General Motors Corp.*, 315 B.R. 148, 157 (M.D. Fla. 2004) (citation omitted), *aff'd*, 459 F.3d 1249 (11th Cir. 2006). *See also JP Morgan Chase Bank v. Altos Hornos De Mexico, S.A. De C.V.*, 412 F.3d 418, 424 (2d Cir. 2005).

Three factors are relevant to determine whether comity is appropriate: (1) whether the foreign court was competent and used proceedings consistent with civilized jurisprudence; (2) whether the judgment was rendered by fraud, and (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just. *Daewoo Motor America, Inc. v. General Motors Corp.*, 459 F.3d 1249, 1258 (11th Cir. 2006) (internal quotations and citation omitted). The court also considers due process concerns, such as notice and participation in the foreign proceedings. *Id.* at 1258; *Daewoo Motor America*, 315 B.R. at 158. Finally, comity is particularly appropriate where the claims advanced in an American lawsuit amount to a collateral attack on the foreign proceeding. *Id.* at 1259; *Daewoo*

5

*Motor America*, 315 B.R. at 161.

Here, there is nothing in the record to suggest that Swiss bankruptcy proceedings are not consistent with civilized jurisprudence; that they are somehow tainted by fraud; or that they are inconsistent with American public policy.

The other factors also favor dismissal in deference to the Swiss bankruptcy proceedings. First, it is undisputed that Mr. Dieker not only had notice of the bankruptcy filing by SIP Geneva but that he – as its principal – actually initiated that filing. Although Mr. Dieker now disputes in his briefs that the bankruptcy of SIP Geneva implicated the assets of ASIP – its subsidiary – he testified to the contrary in his deposition:

> Q. The assets of American SIP were included in that bankruptcy?
>
> A. Correct.

(Dieker Depo. at 116-17) He further testified that, following the filing of the SIP Geneva bankruptcy, it was the Swiss bankruptcy office that controlled ASIP. (Dieker Depo. at 120) In fact, Mr. Dieker testified that he simply thought he would get paid by ASIP for the Orion 5 machine before the bankruptcy took effect. (Dieker Depo. at 116) Moreover, to the extent that there is a question of Swiss law as to the effect of SIP Geneva's bankruptcy filing on the availability of the assets of its subsidiary, that too weighs in favor of deference to the Swiss

6

bankruptcy tribunal.

Further, Mr. Dieker's contention that the Swiss bankruptcy filing did not implicate the assets of ASIP is belied by the fact that he has, in fact, filed a claim in that proceeding for the same monies that he seeks in this action. It is undisputed that, pursuant to the direction of the Swiss bankruptcy office, ASIP remitted to that office the funds from the sale of the Orion 5 machine to Honeywell. Although Mr. Dieker now argues that ASIP was not required to remit those funds to the Swiss receiver, the fact is that those monies are now within the control of that foreign tribunal and Mr. Dieker has filed a claim against them in that proceeding. The propriety of those actions and the proper distribution of those assets is a matter best determined by the Swiss bankruptcy tribunal.

Next, Mr. Dieker's attempt to asserts claims of successor liability and voidable transfer against Starrag-Heckert also run afoul of the principles of comity to international bankruptcy proceedings. In the *Daewoo Motor America* litigation cited above, the plaintiff company attempted to bring various claims against its foreign parent and the company that acquired the parent's assets and business following the parent's Korean bankruptcy. Applying principles of international comity, the district court noted that the claims for successor liability against the acquiring corporation would, in essence, amount to a collateral

7

attack on "the entire Korean reorganization process and result." *Daewoo Motor America*, 315 B.R. at 161.

The Eleventh Circuit affirmed, noting that the acquiring company's purchase of the bankrupt parent company's assets had been approved by the Korean bankruptcy tribunal as part of the reorganization. The court stated:

> Daewoo America cannot now collaterally attack that order by bringing claims against the recipients of the property transferred based on the approval by the Korean court.
>
> The collateral nature of the claims Daewoo America is made more apparent by its request for relief. On eleven of fourteen claims, the relief sought is an injunction against the defendants. On another claim, the relief sought is that the "transfer be set aside." <u>Because granting the relief sought would require the court to set aside the asset transfer to the defendants, which was approved by the Korean court, the complaint is a collateral attack on the order of the Korean court.</u>

*Daewoo Motor America*, 459 F.3d at 1259.

Similarly here, plaintiff brings claims of "successor liability" and "voidable transfer" against Starrag-Heckert, although the sale of SIP Geneva's assets to Starrag was approved by the Swiss bankruptcy tribunal. As recipients of that property, Starrag-Heckert stands in the same shoes as the acquiring company in *Daewoo Motor America* and, for the reasons stated in those decisions, Dieker's attempt to reach those assets in this action amounts to a collateral attack on the foreign bankruptcy proceeding.

Finally, the court notes that even if it were to reach the

merits of this matter, it would conclude that plaintiff's claims should be rejected as a matter of law.  Plaintiff concedes that ASIP was directed by the Geneva Bankruptcy Office to remit the proceeds of the sale of the Orion 5 to that office as part of SIP Geneva's bankruptcy.  Plaintiff has produced no evidence that such directive was improper or that ASIP did not rely on it in good faith in sending these monies to Geneva.  It thus seems to this court as a matter of equity that ASIP has a complete defense to plaintiff's claims and, again, that plaintiff's remedy lies with the Swiss Bankruptcy tribunal.

Therefore, having reviewed this matter, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that plaintiff's motion for summary judgment (Doc. #47) be, and is hereby, **DENIED**, and defendants' motion for summary judgment be, and is hereby, **GRANTED**.  A separate judgment shall enter concurrently herewith.

This 3rd day of November, 2008.



Signed By:
*William O. Bertelsman* WOB
**United States District Judge**

TIC: 40 min.